UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JEFFREY P. LOUVIERE | CIVIL ACTION NO. 6:16-cv-00724 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| W&T OFFSHORE, INC., ET AL. | BY CONSENT OF THE PARTIES |

**MEMORANDUM RULING**

Pending before this Court is the motion for partial summary judgment that was filed by the plaintiff, Jeffrey P. Louviere, with regard to his own comparative fault and the fault of third parties and non-parties to the suit. (Rec. Doc. 49). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

**Background**

On June 8, 2015, the plaintiff, Jeffrey P. Louviere, was employed by Living Quarters Technology[1] ("LQT") as an HVAC technician, and he was assigned by his employer to perform maintenance on an air conditioning unit located at Ship Shoal 349-A, a fixed platform that was owned and operated by defendant W&T Offshore, Inc. It is undisputed that the platform was located on the Outer Continental Shelf in

---

[1] This company's name has also been stated to be LQT Industries, Inc. (Compare Rec. Doc. 49-2 at 9 and Rec. Doc. 65 at 7). H&P submitted excerpts from the deposition of Peter Reeves, who was LQT's new construction manager in March 2015 (Rec. Doc. 66-2 at 9), but those excerpts do not resolve this inconsistency.

the Gulf of Mexico off the coast of Louisiana, and Mr. Louviere claims that he was injured when he fell down a flight of stairs on the platform's heliport. Accordingly, Louisiana law applies to this lawsuit, as surrogate federal law, pursuant to the Outer Continental Shelf Lands Act, particularly 43 U.S.C. § 1333(a)(2)(A).

At the time of the accident, W&T owned and operated the platform and was conducting ongoing oil and gas production activities. Drilling activities from the platform had ceased, and the drilling rig that was on the platform – H&P Rig 107 – was "warm stacked." The drilling rig was owned by Helmerich & Payne International Drilling Company ("H&P"), and pursuant to an agreement between W&T and H&P, only a three-man H&P skeleton crew remained on board the platform to maintain the rig. Both the platform and the rig had heliports, but only the heliport on the rig was used while the rig was on the platform. Therefore, all persons entering onto or leaving from the platform were required to use the stairs that connected the heliport and the platform.

At the top of the stairs leading to the heliport was a hinged liftgate. The liftgate usually stayed in a closed position, blocking access from the stairs to the heliport. When a helicopter landed and personnel had to travel from the heliport to the platform or vice versa, the liftgate would be swung upwards and then locked open by

inserting a pin through the arm of the liftgate. In the upright position, the liftgate formed a handrail.

When drilling operations were being conducted by H&P, a designated helicopter landing officer ("HLO") employed by H&P met all incoming flights, opened the liftgate at the top of the stairs leading to the heliport, assisted personnel with their baggage, and then closed the liftgate. When H&P's rig was "warm stacked," however, the H&P medic who functioned as the HLO was no longer assigned to work on the platform, and no one else was formally designated as the HLO. Because his usual work station was near the heliport, H&P's crane operator, Roy Surber, usually acted as the HLO.

On June 3, 2015, W&T's compliance inspector, Dennis Abshire, flew out to the platform. No one met him when he landed. He told the person in charge ("PIC") of the platform, W&T's employee Chris Wiesendanger, that the configuration of the liftgate and the lack of an HLO presented safety concerns.[2]

Just five days later, the plaintiff and Thomas Watts, another HVAC technician with LQT, flew out to the platform. That morning, the crane operator was working on the pipe rack and was not able to meet the helicopter. Therefore, he radioed Mr. Wiesendanger, advised that he could not act as the HLO, and Mr. Wiesendanger

---

[2] Rec. Doc. 49-5 at 117.

assigned W&T employee Andrew Davies to fill that role. Mr. Davies claimed that he had never previously opened the liftgate and did not know that a pin had to be used to keep the liftgate in the upright position.[3] It is undisputed that Mr. Davies opened the liftgate but did not lock it in place.[4]

Mr. Watts started down the stairs from the heliport to the platform ahead of the plaintiff. He did not use the open liftgate as a handrail.[5] Before he reached the bottom of the fifteen-step flight of stairs, Mr. Watts heard a loud noise and was then struck from behind when the plaintiff fell down the stairs and crashed into his back.[6] The plaintiff testified at his deposition that he had his clothes bag in his left hand and his tool bag on his back; therefore, as he started down the stairs, he placed his right hand on the open liftgate to use it as a handrail.[7] As he did so, the liftgate closed and

---

[3] Rec. Doc. 49-7 at 89.

[4] Rec. Doc. 49-5 at 75 (During Mr. Abshire's deposition, W&T's counsel said: "I'm happy to stipulate that Mr. Davies took the pin, opened the gate and did not put the pin back in.")

[5] Rec. Doc. 49-8 at 10.

[6] Rec. Doc. 49-8 at 11-14.

[7] Rec. Doc. 49-6 at 11-13.

caused him to fall down the stairs, with his right leg beneath him,[8] in a position he compared to a baseball slide.[9] He slid into Mr. Watts.

The plaintiff and Mr. Watts immediately reported the incident to Mr. Wiesendanger. At that time, Mr. Abshire was also in W&T's office with Mr. Wiesendanger.[10] Mr. Abshire and Mr. Wiesendanger investigated the incident[11] and quickly learned that Mr. Davies had not pinned the liftgate in the open position.

The plaintiff claims that he was injured in the fall. He sued W&T, W&T's insurer, and H&P. By means of the pending motion, the plaintiff seeks to be absolved of responsibility for causing the incident. He seeks a finding that neither he nor any party other than W&T or H&P is comparatively at fault.

## Analysis

### A. The Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of

---

[8]  Rec. Doc. 49-6 at 11.

[9]  Rec. Doc. 49-6 at 16; Rec. Doc. 49-8 at 14.

[10] Rec. Doc. 49-5 at 45.

[11] Rec. Doc. 65-2 at 3; Rec. Doc. 65-4 at 6.

its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[12] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[13]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[14] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[15] All facts and inferences are construed in the light most favorable to the nonmoving party.[16]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[13] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[14] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[15] *Washburn v. Harvey*, 504 F.3d at 508.

[16] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

claim.[17] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[18]

**B.     The Relief Sought in the Plaintiff's Motion**

W&T argued that the plaintiff's motion "asks this Court to summarily determine that both defendants are at fault."[19] This Court disagrees. While the plaintiff contends that both W&T and H&P were at fault in causing the incident, the motion currently before this Court does not seek a ruling with regard to the fault of any defendant. Only the comparative fault of the plaintiff, third parties, and non-parties is currently before this Court.[20]

**C.     The Motion is Not Procedurally Improper**

W&T argued that the plaintiff's motion is procedurally improper because its resolution would not adjudicate the fault of all parties. But motions for summary judgment are routinely filed by defendants in multi-party cases and resolved by the court, and none of the cases cited by W&T in support of this argument are binding

---

[17]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[18]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[19]     Rec. Doc. 65 at 5.

[20]     This Court does not understand the distinction the plaintiff is attempting to make between third parties and non-parties.

on this Court. If a defendant can establish that it is free from fault before trial, as is commonly done, then it is logical that a plaintiff should be afforded that same opportunity. This Court finds that this argument lacks merit.

D.    **The Motion is Not Premature**

W&T argued that the plaintiff's motion is premature because a plaintiff's comparative fault cannot be allocated before there is a finding that one or more parties are liable for causing the plaintiff's accident and resulting injuries. But W&T cited no direct, controlling authority for that proposition. Again, this Court notes that motions for summary judgment are routinely filed and resolved in multi-party cases when a defendant contends that it should be found to be without fault. The plaintiff's motion in this suit is not logically different. This Court therefore finds that this argument lacks merit.

E.    **H&P is Not Entitled to Summary Judgment in its Favor**

Instead of merely responding to the plaintiff's motion, H&P argued that it is entitled to summary judgment in its favor. While Fed. R. Civ. P. 56(f) does permit a court to grant summary judgment for a nonmovant, that part of the rule should not be read out of context. Such a ruling can be granted only after the parties have been notified that the court is considering taking such action and only after giving the other parties an opportunity to respond. Furthermore, the rule is expressly discretionary,

stating that "the court may. . . grant summary judgment for a nonmovant." In this case, the deadline for filing motions for summary judgment elapsed without H&P filing such a motion. For that reason, this Court will exercise its discretion and will not convert H&P's opposition memorandum into a motion for summary judgment.

### F. H&P Failed to Establish a Genuine Issue of Material Fact

H&P contended that there is a genuine issue of material fact that precludes a finding that the plaintiff was not comparatively at fault, arguing that the plaintiff's conduct contributed to the incident because he was carrying his bags down the staircase when he fell. H&P based this argument on deposition testimony from Mr. Wiesendanger, W&T's PIC, who said this during his deposition testimony:

> You know, you don't ---- you don't go down with your bags. Put your bags on the side of the opening, you walk down the stairs a few steps, you grab your bags, you walk down.[21]

Mr. Wiesendanger did not identify a statute, rule, policy, or jurisprudential holding that imposes such a duty on persons using offshore staircases. He did not explain how a person who is not met by an HLO but must convey his clothes bag and tool bag from the heliport to the platform can do so without carrying his bags down the staircase. The plaintiff testified that, at the time that the liftgate closed, causing him

---

[21] Rec. Doc. 49-7 at 129.

to fall down the stairs, he had his tool bag on his back and his clothes bag in his left hand and was at or near the top of the staircase.[22] Even if the plaintiff had followed the exact procedure outlined by Mr. Wiesendanger, the result would not have changed. With or without his bags, using the liftgate as a handrail would have resulted in the liftgate closing and his falling down the stairs. Accordingly, H&P did not establish that there is a genuinely disputed factual issue related to the plaintiff's comparative fault based on Mr. Wiesendanger's quoted testimony.

### G. Genuine Issues of Material Fact Preclude Summary Judgment in the Plaintiff's Favor

W&T argued that the plaintiff either knew or should have known that it was necessary to insert a pin into the liftgate to lock it in the open position before descending down the heliport's stairs and suggested that he was comparatively at fault for failing to confirm that the pin was in place before he descended the heliport stairs.

It is undisputed that there was no sign cautioning persons using the heliport stairs that a pin needed to be inserted in the liftgate's locking mechanism to keep the liftgate upright. A photograph of the liftgate taken shortly after the accident showed that the pin was attached to the liftgate by a chain that was dangling over the side of

---

[22] Rec. Doc. 49-6 at 11-13.

the liftgate near the top of the stairs.[23] Mr. Abshire testified that, from the perspective depicted in a particular photograph reviewed during his deposition, a person descending the stairs cannot see the locking mechanism of the liftgate.[24] Mr. Abshire did not offer testimony with regard to whether the plaintiff should have been able to notice that the liftgate was not properly locked open before he started his descent. Mr. Wiesendanger testified that, when walking up the stairs to investigate the accident, he noticed that the pin was hanging over the side of the liftgate.[25] His conclusion was that this would have made the pin impossible to see.[26] When analyzing photographs taken shortly after the accident, Mr. Wiesendanger also noted that the locking pin was not visible.[27] The plaintiff testified that he was not aware that a pin was used in connection with opening and closing the liftgate.[28] He also stated that he was not trained to operate heliport liftgates.[29]

---

[23] Rec. Doc. 65-10 at 1.

[24] Rec. Doc. 65-4 at 10. It is unclear whether the photograph referred to by Mr. Abshire is, in fact, the photograph found at Rec. Doc. 65-10 at 1.

[25] Rec. Doc. 65-2 at 3.

[26] Rec. Doc. 65-2 at 3.

[27] Rec. Doc. 65-2 at 16-17. It is unclear precisely which photographs he was referring to.

[28] Rec. Doc. 49-6 at 18.

[29] Rec. Doc. 65-13 at 4.

However, the plaintiff was an experienced offshore worker with significant experience with landing on and exiting from similar heliports across the Gulf of Mexico.[30] In fact, he had landed on the same platform and navigated past the same liftgate just weeks before the accident occurred.[31] On the earlier trip, however, someone from the platform had greeted the helicopter.[32]

Whether the plaintiff knew or should have known that a pin had to be inserted in order for the liftgate to be locked in place in the open position and used as a handrail is critical to the issue of his comparative fault. Similarly, whether the plaintiff knew or should have known that the pin was not inserted on the day of the accident is a critical inquiry.

To find that the plaintiff was not at fault, this Court would be required to make an inference that the plaintiff did not know that a pin was required and did not know that the pin had not been inserted in the liftgate on the day of the accident. In resolving a motion for summary judgment, however, this Court is required to draw all inferences in favor of the nonmoving party. Therefore, this Court cannot draw these inferences. Instead, this Court must find that a genuinely disputed issue exists,

---

[30] Rec. Doc. 65-13 at 3.

[31] Rec. Doc. 49-6 at 17-18; Rec. Doc. 65-13 at 2.

[32] Rec. Doc. 49-6 at 18.

which precludes summary judgment in the plaintiff's favor. Resolution of this issue must be left to the jury at trial.

**H.     Third Party Fault**

In addition to seeking a ruling with regard to the plaintiff's own comparative fault, the instant motion also seeks a determination that no third party or non-party was at fault in causing the accident. Having already found that the motion must be denied with regard to the plaintiff's fault, this Court pretermits discussion of third party and non-party fault and leaves this issue to the jury at trial.

## Conclusion

Having found that a genuine issue of material fact exists,

IT IS ORDERED that the plaintiff's motion for partial summary judgment on the issue of his own comparative fault, third party fault, and non-party fault (Rec. Doc. 49) is DENIED.

Signed at Lafayette, Louisiana, this 26th day of March 2018.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE